UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PASS-A-GRILLE BEACH
COMMUNITY CHURCH, INC.,

    Plaintiff,

v.                                                        Case No. 8:20-cv-1952-TPB-SPF

CITY OF ST. PETE BEACH,
FLORIDA,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

This matter is before the Court on "Plaintiff's Motion and Memorandum of Legal Authority for a Preliminary Injunction and Declaratory Relief," filed by counsel on August 21, 2020. (Doc. 3). On September 30, 2020, Defendant filed a response in opposition to the motion. (Doc. 25). On October 9, 2020, Plaintiff filed a reply. (Doc. 30). On November 4, 2020, the Court held a hearing to address this matter. *See* (Docs. 32, 33). After reviewing the motion, court file, and the record, the Court finds as follows:

### Background

Plaintiff Pass-a-Grille Beach Community Church, Inc. ("the Church") has existed as a faith community for over 100 years and since 1959 has been organized as a Florida not-for-profit entity. Since 1957, the Church has owned its current property, including the parking lot which presently includes approximately 77

spaces. The Church is located within the City of St. Pete Beach, Florida ("The City"), just across the street from Pass-A-Grille Beach.[1]

The Church states that since 1957, it has allowed the general public to use its parking lot to easily access the beach. According to the Church, offering free parking attracts people to the Church and affords it a unique opportunity to serve the community and reach out to people who may not otherwise come to the Church. It states that a vital aspect of its beliefs and ministry is outreach to the local community and the world, heeding a direct command from Christ himself. It desires to use "biblically-based hospitality" to help people enjoy a day at the beach with their families. The Church cites several Biblical verses in support of its beliefs on this point.[2]

Because free parking attracts members of the community who may not otherwise come to church, beginning in 2016, the Church's youth group decided to evangelize, pray for, and seek donations for their mission trips from people parking in the lot. At some point around this time – the exact date is not clear and does not matter for purposes of this motion – some of the Church's neighbors began complaining about the Church's parking practices. Despite the Church's apparent 60-year history of determining its own parking policies, in June 2016, the City began citing the Church for violation of certain municipal parking restrictions on commercial parking lots. The legality of the Church's parking lot practices was

---

[1] Although not a part of the record in this case, the undersigned notes that the beaches in Pinellas County Florida are regularly ranked as among the best in the entire world.
[2] *See* (Doc. 21 at ¶27).

litigated before one of the City's special magistrates in 2016 who entered orders allowing the Church to accept donations as long as they did not advertise the parking as a "fundraiser."

Nonetheless, it appears that some of the Church's neighbors remained unhappy with the Church's parking practices, refused to accept the decision of the City's special magistrate, and continued to bring their concerns to the attention of City officials. The City, apparently finding merit in the concerns, cited the Church for parking violations on June 16, 2020.

Although the City's code enforcement magistrate entered an order in 2016 allowing the Church to use its parking lot for beach parking and allowing donations, the City now takes the position that its land use ordinances prohibit the Church from allowing anyone who is not a "customer" or "patron" of the Church from parking in any of the Church's parking spaces. Under the current policy, the Church faces a fine of $500 every time anyone parks in the lot and does not engage in what the City has described as a "legitimate church purpose." On August 11, 2020, an order from the City's code enforcement magistrate held that the Church could not allow beach parking – free or otherwise. The magistrate concluded the Church had allowed non-patrons to park in its lot and fined the Church $1,000.

On September 9, 2020, the Church filed its amended complaint against the City, contending that the land use regulation restricting use of its parking lot presents a substantial burden on its sincerely held beliefs, restricts its free exercise of religion, and treats the Church differently than other non-religious places of

assembly. To protect its rights and prevent irreparable harm to its religious freedom, the Church requests a preliminary injunction.

## Legal Standard

To obtain a preliminary injunction, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 2020 WL 6948354, at *1 (Nov. 25, 2020). "A preliminary injunction is an extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly stablish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations omitted).

The Church's request for injunctive relief is based on counts one and five of its amended complaint, which involve the "Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.,* and count four which involves the First Amendment.[3]

"RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens." *Cutter v.*

---

[3] The First Amended Verified Complaint includes eight separate claims as follows: Count 1 (RLUIPA Equal Terms); Count 2 (Equal Protection 42 U.S.C. § 1983); Count 3 (Florida Land Use); Count 4 (First Amendment 42 U.S.C. § 1983); Count 5 (RLUIPA Substantial Burden); Count 6 (Florida Religious Freedom Restoration Act § 761.03, *F.S.*); Count 7 (Due Process 42 U.S.C. § 1983); and Count 8 (Free Exercise of Religion 42 U.S.C. § 1983).

*Wilkinson*, 544 U.S. 709, 714 (2005).  Congress enacted RLUIPA and its "sister statute," the Religious Freedom Restoration Act of 1993 ("RFRA"), to provide "very broad protection for religious liberty."  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014); *Holt v. Hobbs*, 574 U.S. 352, 356 (2015).  As explained by the United States Supreme Court, the intent of those statutes was to provide even greater protections for religious exercise than are available under the First Amendment.  *Holt*, 574 U.S. at 356.

More specifically, RLUIPA focuses on two general areas where religion and governmental action sometimes come into conflict: (1) state and local land use restrictions and (2) religious rights of institutionalized persons (people in jail or prison).  Consequently, the caselaw involves two rather different factual scenarios – disputes between religious institutions and governmental entities (land use cases) and disputes between prisoners and governmental entities (prisoner rights cases).

In the land use context, governmental entities are prohibited from placing "substantial burdens" on religious exercise under 42 U.S.C. § 2000cc(a)(1) ("substantial burden claim").  They are also prohibited from imposing land use regulations that place religious entities on "less than equal" terms with non-religious entities under 42 U.S.C. § 2000cc(b)(1) ("equal terms claim").[4]  The Supreme Court has been quite active in this area in recent years, having decided cases such as *Holt* and *Hobby Lobby*, and the law is actively evolving as a result.  In

---

[4] 42 U.S.C. § 2000cc(b) includes additional restrictions on governmental actions involving religious activities that are not at issue here.

fact, shortly after the hearing in this matter, the Eleventh Circuit published a decision that impacted the Court's initial analysis.

## Analysis

The Church's request for injunctive relief is based on two separate sections of RLUIPA and the First Amendment. Fortunately, the parties agree on many of the technical legal issues that frequently arise in cases like this, and they are commended for doing so.[5] For that reason, an evidentiary hearing was not necessary.

The parties agree that the Church is a religious institution or assembly, and that the City is a "government" for purposes of RLUIPA. They agree that jurisdiction exists under 42 U.S.C. § 2000cc(a)(2)(C) because the City's Land Development Code is a land use regulation involving individualized assessments of the Church's use. They agree the Church has established a "religious exercise" for purposes of 42 U.S.C. § 2000cc(a)(1). They also agree that the Church has been allowing the general public to park in its lot for over 60 years, sometimes for free and sometimes not, but it now faces fines of up to $500 each time it allows someone to park in its lot who is not there exclusively for "legitimate church purposes." Finally, the parties agree that if the Church can show a substantial likelihood of prevailing on the merits, irreparable harm would result.

While the parties agree on many things, they strongly disagree on one central and dispositive point: the sincerity of the Church's religious beliefs concerning its

---

[5] The parties and the Court have been well served by the excellent legal work done by the lawyers on both sides in this matter.

use of its parking lot. As will be explained in detail below, resolution of this issue ultimately controls the outcome of the Church's request for injunctive relief.

### *Substantial Burden Claim (42 U.S.C. § 2000cc(a)(1))*

A substantial burden claim under RLUIPA derives from 42 U.S.C. § 2000cc(a)(1), which provides as follows:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

The terms "government," "land use regulation," "religious exercise," and "demonstrates" are defined by the statute.[6] Unfortunately, the critical term, "substantial burden," is not defined anywhere in the statute, and trial courts must rely on an evolving body of case law to ascertain its meaning. The Courts of Appeal are split on the definition, but that split is not directly implicated here.

As previously noted, the parties agree the key issue in this case is the *sincerity* of the Church's religious beliefs concerning the parking lot. While the term "sincerity" also does not appear in the statute, sincerity of belief is an implied condition in all RLUIPA cases. *See, e.g., Cutter*, 544 U.S. at 725 n.13 (RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed religiosity."); *Hobby Lobby*, 573 U.S. at 718 ("[T]he scope of RLUIPA shows that Congress was confident of the ability of the federal courts to weed out insincere claims.");

---

[6] *See* 42 U.S.C. § 2000cc-5.

*Gardner v. Riska*, 444 F. App'x 353, 355 (11th Cir. 2011) (RLUIPA does not preclude inquiry the sincerity of a prisoner's religious claim). Here the parties differ slightly on where the sincerity issue fits into the framework for analyzing a substantial burden claim. But that difference does not matter under the procedural posture of this case – both parties agree that if the Church's stated religious belief is not sincere, the Church loses.

Substantial burden claims have been addressed by the Eleventh Circuit in the context of both land use and prisoner rights scenarios. The controlling Eleventh Circuit opinion in this area, *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004), is a land use case where the court held that a zoning ordinance excluding churches and synagogues from a business district that allowed private clubs and lodges was not a RLUIPA substantial burden violation. According to the court, "we cannot say that walking a few extra blocks is 'substantial,' as that term is used in RLUIPA." *Id*. at 1228. In *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015), a prisoner case, the Eleventh Circuit discussed the sincerity of a plaintiff's religious beliefs and the meaning of "substantial burden."

After the Supreme Court's decisions in *Holt* and *Hobby Lobby*, some Circuits specifically reevaluated their existing precedents in this area. For example, in *Schleman v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015), the Seventh Circuit, per Judge Easterbrook, held that the "substantial burden test" after *Holt* and *Hobby Lobby* was "mush easier to satisfy."[7] Although the Church has questioned *Midrash's*

---

[7] The Church argues that *World Outreach Conference Center v. City of Chicago*, 591 F.3d 531 (7th Cir. 2009) stands for the sweeping proposition that an established non-conforming

continued vitality in light of *Holt* and *Hobby Lobby*, on November 16, 2020, the Eleventh Circuit issued an opinion in a land use case, *Thai Meditation Association of Alabama v. City of Mobile*, 980 F.3d 821 (11th Cir. 2020), where it continued to follow *Midrash*.[8]  As such, the Court will evaluate the Church's substantial burden claim under *Midrash, Davila,* and other relevant Eleventh Circuit opinions.

When discussing the meaning of "substantial burden," the *Midrash* court explained that at one end of the spectrum, a mere "incidental effect" or "inconvenience" on religious exercise doesn't constitute a substantial burden. *Midrash*, 366 F.3d at 1227.  But at the other end, "a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct." *Id*.  As recently emphasized in *Thai Meditation Association,* "a substantial burden exists when government action coerces or pressures religious adherents to change their behavior, even if that coercion or pressure isn't so extreme as to require them to forgo their beliefs completely." *Thai Meditation*, 980 F.3d at 831 (citing *Midrash* and *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 349 (2d Cir. 2007)).

Here, there is no question the Church has established a substantial burden under *Midrash*.  Under the City's current interpretation of its parking ordinances,

---

use constitutes a substantial burden under the RLUIPA as a matter of law.  After carefully reviewing the opinion in *World Outreach*, and the specific factual background presented there, the Court is not convinced it stands for the sweeping proposition of law argued by the Church.

[8] It should be noted that the parties in this case agreed that *Midrash* should control, so the issue of its correct application after *Holt* and *Hobby Lobby* was not litigated or determined by the Court of Appeals.

the Church is not permitted to allow people to use its own parking lot – for free or for a fee – unless the people are parking there for a "legitimate church purpose." What might constitute a "legitimate church purpose" is up to the City, not the Church. This is certainly more than an "incidental effect" or "inconvenience." But this determination does not end the inquiry. As noted, the City has questioned the sincerity of the Church's religious belief relating to use of its parking lot.

While the lack of sincere religious belief seems to have been an implied issue in both *Midrash* and *Thai Meditation Association,* it was not directly raised in either case. Precisely where the sincerity issue fits into the *Midrash* analysis is not clear. But there can be no doubt that current Eleventh Circuit law on this subject, as required by *Holt* and *Hobby Lobby*, certainly allows the sincerity of a RLUIPA plaintiff's religious beliefs to be disputed in litigation.

Courts are not required to accept any and all claims of alleged religious sincerity at face value. "RLUIPA does not offer refuge to canny operators who seek through subterfuge to avoid laws they'd prefer to ignore. Like those who set up 'churches' as cover for illegal drug distribution operations. Or those who, facing the difficult realities of prison life, are tempted to seek special dispensations through fraudulent assertions of faith." *Yellowbear v. Lampert,* 741 F.3d 48, 54 (10th Cir. 2014) (Gorsuch, J.). On the other hand, recognizing the importance of religious liberty, courts are fairly deferential when adjudicating religious sincerity claims.

The test for evaluating the sincerity of a RLUIPA plaintiff's religious beliefs is discussed in *Davila*. There, the court was considering RLUIPA claims brought by

a federal prisoner, a Santeria Priest, who was denied the ability to wear a unique set of beads and shells infused with the spiritual force Ache. Although the sincerity of the plaintiff's religious beliefs was not directly at issue, the Eleventh Circuit noted that when considering sincerity of religious beliefs:

> [T]he Supreme Court recently explained that it is not for us to say that a plaintiff's religious beliefs are mistaken or insubstantial. Instead, our narrow function in this context is to determine whether the line drawn between conduct that is and is not permitted under one's religion reflects an honest conviction. This rule minds the Supreme Court's warning that judges must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim. A secular, civil court is a poor forum to litigate the sincerity of a person's religious beliefs, particularly given that faith is, by definition, impossible to justify through reason. As our sister circuit noted in the related context of RLUIPA, Congress made plain that we ... lack any license to decide the relative value of a particular exercise to a religion. That being the case, we look only to see whether the claimant is (in essence) seeking to perpetrate a fraud on the court—whether he actually holds the beliefs he claims to hold.

*Davila*, 777 F.3d at 1204 (citations omitted). The sister court referenced in the *Davila* opinion was the Tenth Circuit where then Circuit Judge Gorsuch wrote that "trying to separate the sacred from the secular can be a tricky business—perhaps especially for a civil court whose warrant does not extend to matters divine. […] When inquiring into a claimant's *sincerity*, then, our task is instead a more modest one, limited to asking whether the claimant is (in essence) seeking to perpetrate a fraud on the court – whether he actually holds the beliefs he claims to hold – a comparatively familiar task for secular courts that are regularly called on to make

credibility assessments -- and an important task, too, for ensuring the integrity of any judicial proceeding." *Yellowbear,* 741 F.3d at 54 (emphasis in original).[9]

Based on the foregoing, the ultimate question presented here is whether the Church is, in essence, seeking to perpetrate a fraud on the Court – whether it actually holds the beliefs it claims to hold regarding its use of its parking lot. The Church, through its verified filings, including the declarations of two of its ministers, has explained the religious basis for its position, including citations to the Bible.

Rev. Dr. Keith A. Haemmelmann, the Church's lead minister, stated in a declaration, under penalty of perjury, as follows:

- The Church's practice of permitting open and free parking to the public on its lot is guided by two of the Church's core values - stewardship and hospitality.

- Throughout the Old and New Testaments, God specifically calls his people to practice hospitality and to love others more than oneself. This is emphasized in multiple passages such as Romans l2:3, 1 Peter 4:9, Hebrews 13: l-12, I Timothy 3:2, and others. By showing hospitality to others, Jesus says we are worshipping Him (Matthew 25:34-36).

- The Church's regular and historical practice of offering its lot to the general public is an act of service and worship.

- God also calls us as a Church to practice good stewardship (Matthew 25:14-30). This means we use all that we have wisely and in a way that serves God. The Church has been blessed with a location that is beautiful, accessible, and available for serving the community. Biblical stewardship demands that we

---

[9] In *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006), a RLUIPA case with facts similar to those presented here, the Tenth Circuit considered, among other things, jury instructions that were given at a trial in connection with a RLUIPA "substantial burden" claim. There, the trial court gave an instruction that "[a] religious belief is 'sincere' if it is truly held and religious in nature." *Id.* at 663 n. 9. That particular jury instruction was not the subject of the appeal, so the Court of Appeals made no ruling as to its accuracy or completeness.

continue to offer the parking lot to the public as a sign of hospitality.  Indeed, to make a practice of turning away or even towing visitors would be a sin against God.[10]

Jeanne Haemmelmann, the Church's Associate Minister, has offered – under oath – similar religious reasons supporting the Church's position.[11]  In a declaration attached to the amended complaint, Ms. Haemmelmann also stated that "[t]he Church desires to attract people to the Church so that they can learn about, join in, and support the Church's ministries.  The Church's free parking is one of the most effective ways the Church can use the property God has given it to serve the community and attract new people to the church."[12]  The Church states that a "vital aspect [of its] beliefs and ministry is outreach to the local community and the world heeding a direct command from Christ himself: 'Therefore go and make disciples of all nations, baptizing them in the name of the father and the Son and of the Holy Spirit, and teaching them to obey everything I have commanded you.' Matthew 28:19-20a."[13]

The City directly challenges the sincerity of Rev. Dr. Keith Haemmelmann, Associate Minister Jeanne Haemmelmann, and the Church's claim that its actions are rooted in sincerely held religious beliefs.  According to the City, it is "clear this dispute has little to do with religion [and] the Church's religious exercise appears manufactured to avoid compliance with local regulations."[14]  The Church claims it

---

[10] *See* (Doc. 30-1).
[11] Ms. Haemmelmann's sworn testimony is contained in the allegations of Plaintiff's amended complaint (Doc. 21) and Plaintiff's reply brief (Doc. 30-2).
[12] *See* (Doc. 21 at ¶¶ 20 and 21).
[13] *Id.* at ¶ 15.
[14] *See* (Doc. 25 at 2-3).

has offered free parking for 60 years, except "for a few months during one summer occasionally charged people to park in the lot on certain weekend afternoons."[15]  But the City filed various Declarations from witnesses, including two Church members, who have seen the Church's parking lot regularly closed to the public at various times, including "for weddings and other events."[16]  The City suggests a factual dispute exists regarding the sincerity of the Church's religious beliefs that must be determined by a jury.

In disputing the sincerity of the Church's religious beliefs, the City places great weight on its argument that the Church as not *always* offered free parking but has, from time to time, charged for parking or accepted voluntary donations. According to the City, "Plaintiff's history of restricting access to its property for convenience or profit undermines any claim that its faith truly compels offering public parking."[17]  That the Church occasionally charged for parking is certainly relevant, but not sufficient to create a triable issue of fact when the legal standard is whether the Church's sincerity of religious beliefs constitutes a fraud on the Court as discussed in *Davila* and *Yellowbear*.  The Church is certainly not attempting to perpetrate a fraud upon the Court when it states it desires to use its parking facilities to further its mission by attracting new people.  Common sense shows that attracting new members is an important goal for almost all community organizations and mainstream religious groups.  Likewise, giving away something

---

[15] *See* (Doc. 30 at 3).
[16] *See* (Docs. 25-4; 25-5).
[17] *See* (Doc. 25).

for free (in this case parking) is a time-honored strategy used to generate attention, create interest, and attract new customers.

At most, the City has demonstrated that the Church may have changed its mind over the years regarding the religious implications of its use of its parking lot, or that the Church may have mixed motives relating to its parking policies. This does not mean that the Church's presently stated religious beliefs are not sincere. Nothing the City has offered is sufficient to even raise a genuine issue of fact as to whether the Church "actually holds the beliefs [it] claims to hold" as discussed in *Davila* and *Yellowbear*. Well respected religious leaders and institutions throughout the world change their minds on certain matters from time to time, and no one would suggest those changes evidence insincere religious beliefs.[18] Offering free parking to attract new members, while occasionally charging for parking to raise money for a youth group, are not mutually exclusive or inconsistent motives. As noted by the Eleventh Circuit in *Davila*, "judges must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." *Davila*, 777 F.3d at 1204 (internal quotation omitted). Indeed, "[c]ourts are not arbiters of scriptural interpretation." *Thomas v. Review Bd., Indiana Sec. Div.*, 450 U.S. 707 (1981).

As a fallback position, the City argues that even if the Church's religious belief is sincere, its parking regulations do not impose a substantial burden because

---

[18] *See, e.g.,* Elisabetta Povoledo, *Vatican Clarifies Pope Francis's Comments on Same-Sex Unions*, N.Y. TIMES, Nov. 2, 2020, https://www.nytimes.com/2020/11/02/world/europe/pope-gay-civil-unions.html.

feasible alternatives to alleviate the burden are available. Specifically, the City asserts that the Church can seek a "conditional use" permit allowing the parking the Church desires. To support this assertion, the City relies on a "Conditional Use Application" that the Church filed in 2016 and later withdrew.[19] The City's argument on this point is not well taken. On August 4, 2020, its own City Attorney, stated in a legal pleading that "[a] commercial and/or off-premise parking lot is no longer permissible *even with a conditional use permit*" (emphasis added).[20]

Finally, RLUIPA allows a government to impose a limitation, even if it substantially burdens a plaintiff's religious exercise, as long as the limitation is the least restrictive means of serving a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1). Compelling government interests are "interests of the highest order." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). The City has made no such showing here.

For the reasons stated, the Court finds that the Church has presented a substantial likelihood of prevailing on the merits of its RLUIPA substantial burden claim pursuant to 42 U.S.C. § 2000cc(a)(1), and a separate injunction will issue forthwith.

---

[19] *See* (Doc. 25-8).
[20] This representation was made by the City Attorney in a document titled "City's Motion for Reconsideration and Amended Order," dated August 4, 2020, and filed in a code enforcement magistrate proceeding. A copy of this document was attached as Exhibit Q to the Church's amended complaint. *See* (Doc. 21-17). The portion discussing the impossibility of a conditional use permit can be found at pages 5-6.

*Equal Terms Claim (42 U.S.C. § 2000cc(b)(1))*

The Church has identified a specific comparator, Dolphin Plaza, that it claims is similarly situated with regard to parking and has allegedly been treated differently by the City. In response, the City has filed certain affidavits that, at this point in the litigation, present factual issues regarding the Dolphin Plaza parking situation. Therefore, the Court does not find the Church has established a likelihood of prevailing on the merits of this claim at this time.

*First Amendment Claim*

Since injunctive relief is being granted on a statutory claim, the Court does not need to address the Church's First Amendment claim. *See Primera Iglesia Bautista of Boca Raton v. Broward Cty.*, 450 F.3d 1295, 1306 (11th Cir. 2006) (when party raises both statutory and constitutional arguments in support of judgment, court should first consider whether party is entitled to full relief under statute and, if so, should not reach constitutional issue).[21]

---

[21] However, at first blush it is difficult to imagine how the City's current policy of limiting the Church's use of its parking lot to "legitimate church purpose" could ever be workable in a practical sense, even putting aside First Amendment considerations. For example, would it be a "legitimate church purpose" if members of the Church's youth group began a meeting inside the Church but then chose to continue their meeting across the street at the beach? Would it be a "legitimate church purpose" if the Church allowed a non-religious community group, such as the Rotary Club, to use its building? Would it be a "legitimate church purpose" if the Church hosted a Boy Scout Troop that held their meetings at the Church? What if the Boy Scouts initially met at the Church, but then went across the street to the beach to work on a swimming merit badge? What if, instead of working on the swimming merit badge, the Scouts went over to the beach just to swim and have fun?

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Plaintiff's Motion and Memorandum of Legal Authority for a Preliminary Injunction and Declaratory Relief" (Doc. 3) is hereby **GRANTED**.

2. The Court will separately enter a preliminary injunction.

3. The requirement of a bond pursuant to Fed. R. Civ. P. 65(c) is **WAIVED**. *See, e.g., Carillon Importers, Ltd. v. Frank Pesce Int'l Group*, 112 F.3d 1125, 1127 (11th Cir. 1997). The Church is a not-for-profit organization and is seeking to enforce its religious rights. The equities weigh in favor of waiving the bond requirement.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>26th</u> day of January, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**