UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PASS-A-GRILLE BEACH
COMMUNITY CHURCH, INC.,

        Plaintiff,

v.                                                            Case No. 8:20-cv-1952-TPB-SPF

CITY OF ST. PETE BEACH,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Supplemental Motion on the Amount of Attorney Fees and Expenses to Which it is Entitled ("Supplemental Motion") (Doc. 54), Defendant's Response to Plaintiff's Supplemental Motion on the Amount of Attorney Fees ("Response") (Doc. 59), and Plaintiff's Reply Brief ("Reply") (Doc. 62). For the reasons discussed below, it is recommended that the Supplemental Motion be granted in part and denied in part.

### I.    Background

Plaintiff, Pass-A-Grille Beach Community Church, Inc. (the "Church" or "Plaintiff"), filed this case against Defendant City of St. Pete Beach (the "City" or "Defendant"), after the City imposed its land use regulations to prohibit the Church from allowing the public to park in its parking lot for free and fined the Church $1,000 (*see* Doc. 1). The Church's initial Complaint asserted eight claims challenging the City's manner of imposing its regulations to restrict the Church's use of its parking lot. Six of the initial eight claims were based on the Church's rights under federal law, namely, the "Substantial Burdens" and "Equal Terms" provisions of the Religious Land Use & Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.

§§ 2000cc(a) & (b)(1), and the United States Constitution.  The other two claims were state law claims based on the Church's rights under Florida's Religious Freedom Restoration Act, Fla. Stat. § 761.03, and its right to continue a legally established use.

On January 26, 2021, the district judge entered a preliminary injunction securing the Church's religious rights with respect to the Church's use of its parking lot (Docs. 38, 39). The Court noted that there was no need to address the Church's constitutional arguments because the Church was entitled to full relief under RLUIPA. (Doc. 38, p. 17).  Thereafter, the parties engaged in written discovery.  To streamline the litigation, on June 2, 2021, the Church filed an Amended Complaint, which removed two claims that provided no more relief than what the Church was already entitled to under the district court's RLUIPA substantial burden analysis (Doc. 43).

The parties participated in a mediation on July 21, 2021 that resulted in a proposed partial settlement agreement that was subject to the approval of the City Commission of St. Pete Beach (Docs. 46, 47).  On August 24, 2021, the City Commission voted to approve the settlement agreement, which resolved all issues between the parties except for the amount of attorneys' fees and expenses the Church would be awarded (Doc. 47).  In particular, the settlement agreement provided that the Church may continue to allow the general public to park in its off-street parking lot and solicit charitable donations, the City would pay the Church $15,000.00 in damages, and the Church was the prevailing party under RLUIPA, thus entitling it to attorneys' fees and costs under 42 U.S.C. § 1988 (Doc. 51-1).  The Court entered a final Consent Decree and Dismissal on August 26, 2021 (Doc. 49).

As a result of the settlement agreement, the Church filed an Unopposed Motion on Entitlement to Attorney's Fees and Expenses on September 10, 2021 (the "Entitlement

Motion") (Doc. 51).   The district judge granted the Entitlement Motion on September 13, 2021 (Doc. 53).   Pursuant to Local Rule 7.01(c), Plaintiff then submitted its Supplemental Motion, which sought $311,994.23 in fees[1] and $4,347.70 in costs.   The Supplemental Motion noted that, during the parties' meet-and-confer session, the City "generally dispute[d] the rates and hours sought by the Church's attorneys," but did not provide any specific objections to the rates and hours expended (Doc. 54, p. 2).[2]   In the Response, the City does not challenge the hourly rates of the Church's counsel, but instead challenges the hours expended by counsel.   In particular, the City argues that the Court should implement an across-the-board cut of 45% of the Church's hours because counsel's billing records improperly contain block billing, excessive time, redundant time, clerical work, travel time, and phantom time.   In its Reply, the Church argues that the City failed to raise specific objections during the meet-and-confer process as required by Local Rule 7.01(c),[3] the City's block billing objections were overstated, counsel exercised the necessary billing judgment, and any alleged "phantom time" was the result of a computational error (Doc. 62).   For the reasons explained below, the undersigned recommends that the Supplemental Motion be granted in part and denied in part.

---

[1] As discussed in more detail below, due to a computational error, Plaintiff updated its request to $298,845.50 in its Reply (Doc. 62, p. 10).

[2] Local Rule 7.01(c) requires the applicant to describe the meet-and-confer effort, specify the resolved and unresolved issues, and include a memorandum of law on any *disputed* issue.

[3] The Church's objection to the procedure that occurred in this case is well-taken. Indeed, because Defendant failed to identify its specific objections to counsel's billing records, the Church had no choice but to paint in broad strokes about why counsel's hourly rates and hours expended were reasonable.   By way of example, the Church used nearly six full pages of the Supplemental Motion to explain why the hourly rates charged by counsel were reasonable, only to find out through the Response that Defendant was not challenging the hourly rates.

## II.    Discussion

The Court uses the familiar "lodestar" method to determine a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party moving for fees has the burden of establishing that the hourly rate(s) and hours expended are reasonable. *See Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).  "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (internal quotation marks omitted). As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Finally, the party seeking an award of expenses bears the burden of submitting a request that enables the court to determine what expenses the party incurred and why it is entitled to an award of those expenses. *Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994).

Plaintiff requests an award of $298,845.50.  The Court previously found that Plaintiff was entitled to attorneys' fees, so the undersigned will only address the reasonableness of the hourly rate and hours expended.

### a.    Reasonableness of Hourly Rates

Plaintiff requests that the Court find reasonable the following hourly rates of the Michigan law firm of Dalton & Tomich, PLC:

(1) $510 for Daniel P. Dalton, a partner with over thirty years of experience;

(2) $410 for Noel W. Sterett, a partner with over fourteen years of experience;

(3) $310 for Lawrence Opalewski, a partner with over seven years of experience;

4

and

  (4) $195 for Adel Nucho, an associate.

Plaintiff also requests that the Court find reasonable the following hourly rates of the Florida law firm of Baskin Eisel Rightmyer & Baskin, P.A.:

  $350 for Lee Rightmyer, a partner with over thirty-nine years of experience; and

  $150 for Cara Kirkley, a paralegal.

To support the requested hourly rates, Plaintiff offers the declarations of Mr. Dalton (Doc. 54-2), Mr. Sterett (Doc. 54-3), Mr. Opalewski (Doc. 54-4), Mr. Nucho (Doc. 54-5), and Mr. Rightmyer (Doc. 54-6).  In addition, Plaintiff offers the declarations of John W. Mauck, an experienced RLUIPA attorney (Doc. 54-8), and Steven C. Dupré, an attorney who has practiced in the Tampa area since 1985 (Doc. 54-7), as expert opinions.  The Court notes that Defendant does not object to the reasonableness of the hourly rates requested.  *See Tacoronte v. Cohen*, No. 6:13-cv-418-Orl-18GJK, 2014 WL 5473567, at *1, 4 (M.D. Fla. Oct. 28, 2014) (approving as unopposed the hourly rates requested by the associates and paralegals/law clerks), *vacated and remanded on other grounds*, 654 F. App'x 445 (11th Cir. 2016).

It is well established that the Court may use its discretion and expertise to determine the appropriate hourly rate to be applied to an award of attorney's fees.  *See Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1331 (M.D. Fla. 2002).  Having considered the experience of the respective attorneys, Mr. Mauck's and Mr. Dupré's opinions that the requested hourly rates are appropriate and reasonable, the complexity of the case, the Court's knowledge of market rates in the Tampa division, the lack of opposition, and the Court's findings regarding hourly rates in other cases, the Court finds the requested hourly rates reasonable.  *See, e.g., First Nat'l Bank of Oneida, N.A. v. Brandt*, No. 8:16-cv-51-AAS, 2021 WL

2856626, at *2–3 (M.D. Fla. July 8, 2021) (finding rate of $750 per hour to be a reasonable hourly rate for an attorney with over thirty-five years of experience, $650 per hour to be a reasonable hourly rate for an attorney with over twenty-two years of experience, $456 per hour to be a reasonable hourly rate for an attorney with five years of experience, and $375 per hour to be a reasonable hourly rate for an attorney with five years of experience); *Suncoast Waterkeeper v. City of St. Petersburg*, No. 8:16-cv-3319-T-27AEP, 2020 WL 1512486, at *6 (M.D. Fla. Mar. 30, 2020) (finding that $490 per hour for attorney with 32 years of experience, $295 per hour for attorney with two years of experience, and $150 per hour for paralegals comported "with the hourly rates awarded in the Middle District of Florida for complex civil litigation and for the level of experience").

### b. Reasonableness of Hours Expended

The next step in the analysis is to determine what hours were reasonably expended. Attorneys must exercise billing judgment, which "means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours, which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quotations, citations, and emphasis omitted). If a district court finds the number of hours claimed to be unreasonably high, it may either "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). An across-the-board method is often preferable to avoid the "pick and shovel work" of pouring through voluminous billing records. *Kenny A. v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008), *rev'd on other grounds*, 559 U.S. 542 (2010). In fact, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential

goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiff seeks compensation for 785.65 hours of attorney and paralegal time (107.5 hours for Attorney Dalton, 346.9 hours for Attorney Sterett, 103.5 hours for Attorney Opalewski, 49.2 hours for Attorney Nucho, 166.65 hours for Attorney Rightmyer, and 11.9 hours for Ms. Kirkley). (Docs. 54-1, 54-6, 62).   In response, Defendant raises numerous objections, and argues that this Court should reduce the requested hours with an across-the-board cut of 45%.  The Court will address each objection in turn.

i.   Block Billing

Defendant first argues that the "most conspicuous problem" with Plaintiff's fee petition is the use of block billing (Doc. 59, p. 9). "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012).   "Generally, block billing makes [review of bills] unnecessarily difficult." *United States v. Tran*, No. 5:15-cv-60-Oc-CEMPRL, 2020 WL 9455629, at *6 (M.D. Fla. Oct. 5, 2020) (citations omitted) (alteration in original), *report and recommendation adopted*, 2020 WL 9455589 (Nov. 23, 2020).   Block billing can warrant a reduction of the number of the hours claimed in a fee motion. *Id.*   The Court has broad discretion in determining the extent to which a reduction in fees is warranted by block billing.  *Id.*

"On the other hand, the mere fact that an attorney has included more than one task in a single billing entry is not, in and of itself, evidence of impermissible block billing." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, No. 09-80918-CIV-MARRA/JOHNSON,

2011 WL 13108095, at *3 (S.D. Fla. Apr. 7, 2011).  "[W]hen multiple listed tasks in a billing entry are intertwined or related, 'including a thorough description of the activities performed clarifies, rather than obscures, the record' and does not constitute improper block-billing." *Id.* (quoting *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009)).

Here, a review of the billing records reveals both firms utilized block billing, though not to the extent suggested by Defendant.  By way of example, Mr. Rightmyer's entry on July 14, 2020 states:

| Jul-14-20 | Conover Affidavit.  Review materials from Mr. Conover.  Telephone call with Mr. Conover.  Draft Affidavit.  Telephone call with Mr. Conover regarding Affidavit, exchange emails, and revise Affidavit.  Exchange correspondences with client regarding witnesses and proofs.  Trial preparation--prepare examination outlines for Jeanne and Keith H., and opening statement.  Receipt of Order rescheduling hearing to July 16.  Forward to client.  Identify Exhibits and prepare Exhibit List.  Finalize hearing notebooks for Special Magistrate.  Prepare correspondence to Special Magistrate, and forward hearing notebook to him.  Telephone conference and emails throughout the day with client. | 6.50 | 2,275.00 | LHR |
|---|---|---|---|---|

(Doc. 54-6, pp. 36–37; *see also* Doc. 59-3, pp. 9–10).  While certain tasks within this entry are intertwined and related, the drafting of the Conover Affidavit, examination outlines, and exhibit list are three distinct tasks.

On the other hand, many of the time entries cited by Defendant are either merely detailed or comprised of tasks that are intertwined.  By way of contrary example, Mr. Sterett's February 25, 2021 time entry for .9 hours states: "Call from Kyle Dudek to discuss City's decision not to appeal and next steps re: settlement and litigation; update co-counsel; call to update client; e-mail summary of communication with City to client." (Doc. 54-12, p. 12; *see*

*also* Doc. 59-3, p. 18).  Here, this entry is comprised of one primary task: a call with opposing counsel to discuss potential settlement and the progression of the litigation, and then two related tasks where Mr. Sterett provides updates co-counsel and the client on this discussion. This is not improper.

Given the foregoing, only a slight across-the-board reduction in fees is warranted on this basis.

ii.  Excessive Time

Defendant next argues that "an even bigger problem with Plaintiff's application is the many instances of excessive billing." (Doc. 59, p. 11).  "Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga.*, 168 F.3d at 428.  Specifically, Defendant argues that it was excessive for Plaintiff's counsel to spend 60.5 hours on the initial complaint, 10.3 hours on amending the complaint, 33.5 hours on the preliminary injunction motion, 28.2 hours on the preliminary injunction hearing, and 131 hours on the fee petition.  The Court agrees in part.

With respect to the complaint, Defendant argues that 60.5 hours is excessive because (1) Plaintiff's counsel has significant experience in religious land use litigation; and (2) the background facts were or should have been readily available given Mr. Rightmyer's preparation of pleadings and motions in the code enforcement matter.  In this matter, the Court is not persuaded that 60.5 hours to draft a complaint is excessive.  Excluding exhibits, the Complaint is 41 pages and contains 170 paragraphs.   It brought eight distinct claims against the City and was supported by a 56-paragraph declaration of an associate minister at the Church (Doc. 1-1).  Given the history between the parties and the code enforcement

proceedings, there was also a considerable amount of documents to digest.  Indeed, there are 18 exhibits to the Complaint and the filing is 237 pages long (excluding the civil cover sheet and *pro hac vice* documents).    Finally, this case presented novel legal issues even for experienced RLUIPA attorneys.[4]  *See, e.g.*, *CBS Broadcasting, Inc. v. Browning*, No. 06-22463-CIV, 2007 WL 2850527, at *9 (S.D. Fla. Sept. 21, 2007) (210 hours for conducting "Phase I" of the litigation—which included drafting a complaint, motion for preliminary injunction, and motion for class certification—was reasonable); *Webster Greenthumb Co. v. Fulton Cty., Ga.*, 112 F. Supp. 2d 1339, 1354 (N.D. Ga. 2000) (concluding that 57.4 hours on a complaint and second amended complaint is not excessive); *cf. ACLU of Ga.*, 168 F.3d at 430 ("While there may be a complaint that reasonably requires 147.88 hours to draft, the complaint in this case is not it.")

Likewise, the Court is not persuaded that 33.5 hours on a motion for preliminary injunction and 28.2 hours on the preliminary injunction hearing are excessive.  As set forth above, this case had a significant amount of documentary evidence at the outset and involved novel legal issues.  In addition, because Rule 65 gives the Court the authority to advance the trial on the merits and consolidate it with the preliminary injunction hearing, it was not unreasonable for the Church's attorneys to prepare accordingly.  *See CBS Broadcasting, Inc.*, 2007 WL 2850527, at *9; *Miller's Ale House, Inc.*, 2011 WL 13108095, at *8 (108 hours opposing a preliminary injunction was reasonable); *cf. Ga. State Conf. of the NAACP v. Kemp for Ga.*, No. 1:17-cv-1397-TCB, 2018 WL 2271244, at *4 (N.D. Ga. Apr. 11, 2018) (billing between 62 and 74.6 hours to draft one-count complaint and motion for preliminary

---

[4] By way of example, Mr. Dalton's August 5, 2020 billing entry includes analysis to "determine if RLUIPA should be included or if we should work on Federal Claims" (Doc. 54-11, p. 10; *see also* Doc. 59-3, p. 1).

injunction was "somewhat" excessive, warranting an across-the-board cut of 15%).

With respect to the 131 hours Plaintiff's counsel spent on the fee motion, however, the Court finds this to be excessive. This amounts to over 17% of the time spent on the entire matter. While the Court understands that significant effort went into researching and drafting the petition, as well as compiling the declarations and billing records in support of the petition, 131 hours is nonetheless excessive. *See, e.g.*, *Ga. State Conf. of the NAACP*, 2018 WL 2271244, at *4 (finding 65 hours regarding attorneys' fees to be excessive); *Am. Charities for Reasonable Fundraising Reguls., Inc. v. Pinellas Cty.*, 278 F. Supp. 2d 1301, 1319 (M.D. Fla. 2003) (stating that "the expenditure of 472.55 hours (or 19 percent of the total time) on the fee petition is excessive"); *cf. WBY, Inc. v. DeKalb Cty., Ga.*, No. 1:14-cv-00253-LMM, 2018 WL 11355682, at *3 (N.D. Ga. June 1, 2018) (34.3 hours was reasonable amount of time to spend on fee petition where case had gone on for over four years, and included time spent explaining why rates and hours were reasonable as well as gathering affidavits of local practitioners attesting to same). Accordingly, the across-the-board reduction takes these excessive hours into consideration. The Court appreciates that Plaintiff was likely forced to spend additional time on the fee petition as a result of Defendant's failure to provide specific objections to Plaintiff's fees during the meet-and-confer process. The Court takes this into consideration in determining its across-board-reduction as well.

### iii.   Redundant Billing

Next, Defendant argues that Plaintiff's requested hours are unreasonable because they contain redundant billing, or a duplication of effort resulting from having five lawyers contribute to the prosecution of this case. "Hours that are excessive, redundant, or otherwise unnecessary should be pruned from a fee application." *Millers Ale House*, 2011 WL 13108095,

at *7.  While there is nothing inherently unreasonable about a client having multiple attorneys, *Norman*, 836 F.2d at 1302, "[a] fee applicant must also demonstrate that multiple lawyers in a case were 'not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer.'" *HSBC Bank USA, N.A. v. Siskind*, No. 12-10055-CIV-MOORE/TORRES, 2013 WL 12383213, at *7 (S.D. Fla. Feb. 14, 2013) (quoting *Norman*, 836 F.2d at 1302); *see also Hazleton v. City of Orlando*, No. 6:10-cv-342-Orl-36DAB, 2013 WL 5952427, at *6 (M.D. Fla. Nov. 4, 2013) ("[A] reduction is warranted where the attorneys are unreasonably doing the same work or have made it impossible for the Court to recognize the distinct contributions of each lawyer.").

The Court is not persuaded that the billing records cited by Defendants reveal instances of redundant billing (Doc. 59-9).  While there are certainly multiple attorneys involved in these tasks, the Court is readily able to discern the distinct role each attorney played.  The billing records related to drafting the motion for preliminary injunction are particularly instructive on this point, and can be summarized as follows:

- 8/12/20: Mr. Dalton participated in a telephone conference with Mr. Rightmyer and the client regarding the motion (among other topics).

- 8/14/20: Mr. Sterett began drafting the motion.

- 8/18/20: Mr. Sterett revised the motion.

- 8/18/20: Mr. Rightmyer reviewed the draft motion and provided comments and proposed revisions.

- 8/19/20: Mr. Opalewski made edits and revisions to the motion.

- 8/19/20: Mr. Sterett made additional edits to the motion.

- 8/20/20: Mr. Sterett finalized the motion.

- 8/24/20: Mr. Nucho reviewed the motion.

(*Id.*, pp. 7–8).  At first glance, it may appear that there are five attorneys improperly doing the same work on the motion for preliminary injunction, but a basic understanding of how law firms divide work reveals that is not the case.  First, Mr. Dalton—the most senior partner and most experienced RLUIPA attorney—speaks with the client and local counsel about case strategy, including filing a motion for preliminary injunction.  Then Mr. Sterett, "the primary laboring oar and lead counsel" on this matter drafted the motion (Doc. 54-3, ¶ 19).  Then Mr. Rightmyer—the attorney most acquainted with the client, as well as the facts and history of the dispute—provided comments and proposed revisions on the draft motion.  Mr. Sterett then delegated the task of incorporating Mr. Rightmyer's proposed revisions to Mr. Opalewksi, a more junior partner (Doc. 54-4).  Mr. Sterett then finalized the draft.  The motion was filed on August 21, 2020 (Doc. 3).  Then, a few days later, Mr. Nucho, an associate, reviewed the motion.  That same day, however, Mr. Nucho also specifically reviewed the verses cited in the motion and drafted a letter for the senior minister of the Church to send to its members (Doc. 54-14, p. 2).  Thus, it appears that Mr. Nucho reviewed the motion for the distinct purpose of helping him with a separate, properly-delegated task.  Accordingly, there does not appear to be any redundant billing; instead, it appears that tasks were properly handled by the appropriate attorneys. *Cf. St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 853 (11th Cir. 2005) (affirming district court's decision to reduce total hours where senior counsel billed for research that could have been assigned to an associate); *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 n.12 (S.D. Ala. 2013) ("For starters, many of the routine, relatively low-skill tasks for which Mr. Ladd recorded billable time could and should have been downstreamed to a junior timekeeper."); *Tiramisu Int'l, LLC v. Clever Imports LLC*,

13

741 F. Supp. 2d 1279, 1297 (S.D. Fla. 2010) ("Because the top-salaried counsel performed hours of legal work that could have been done by a senior associate, the Court recommends that certain deductions be made from the hours spent by [counsel].")

Defendant also argues, on a related note, that Plaintiff's fee petition "abounds with charges for conferencing among the attorneys and client" such that the reasonableness of those billings is undermined (Doc. 59, p. 21). In support of this argument, Defendant has compiled an exhibit purporting to establish that Plaintiff's billing records contain over 280 hours of communications (Doc. 59-10). "[A]ttorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner." *Am. Charities*, 278 F. Supp. 2d at 1319 (citations and quotations omitted). "While time spent in attorney conferences in generally compensable to each participant, the time entries for such conferences must provide sufficient detail in order to determine the nature and need for the conference and, concomitantly, the reasonableness of the time expenditure." *Smith v. WBY, Inc.*, No. 1:16-cv-4017-MLB, 2021 WL 4224012, at *10 (N.D. Ga. Sept. 16, 2021); *see also Lee*, 918 F. Supp. 2d at 1270 ("With so many cooks making the broth, the need for internal conferences to keep everyone on the same recipe rises dramatically and undermines the reasonableness of those billings.").

Many of the disputed conferencing charges, however, are for communications with the client or opposing counsel (Doc. 59-10). For example, the first five pages of the exhibit are Mr. Rightmyer's billing entries from June and July 2020, before the attorneys from Dalton & Tomich, PLC were even involved in this matter. In other words, Plaintiff does not seek reimbursement for 280 hours of intraoffice conferencing. In fact, Plaintiff does not even seek reimbursement for 280 hours of communication. As set forth above, some of Plaintiff's billing

14

records contain improper block billing, and some properly include communication as a related task within a billing entry.  For instance, on July 7, 2020, Mr. Rightmyer billed 1.9 hours for various tasks, which included correspondence, but also included reviewing the City Code, listening to a previous hearing video, and identifying material for use at the upcoming hearing (*Id.*, p. 4).  While this constitutes block billing, it does not result in the conclusion that Mr. Rightmyer is seeking 1.9 hours for communications alone.  Relatedly, on August 31, 2020, Mr. Rightmyer billed 0.8 hours to review public records produced by the City and prepare correspondence to Mr. Dalton and the client (*Id.*, p. 18).  These tasks are intertwined—and as a result there is no block billing concern—but that also does not lead to the conclusion that Mr. Rightmyer billed 0.8 hours on pure communications.

Although Defendant's concern may be overstated, it is not unfounded.  Plaintiff's billing records contain numerous entries for "strategy conferences" involving multiple lawyers, as well as numerous entries involving calls and emails without reference to the subject matter of those communications.  As a result, the Court finds that a slight across-the-board reduction is warranted on this basis.  *See, e.g.*, *Prince v. Marson*, No. 8:19-cv-549-T-35AAS, 2020 WL 1891191, at *1 (M.D. Fla. Apr. 16, 2020) (issuing an across-the-board cut of 15% to offset entries reflecting duplicative work because "three attorneys billed for reviewing and analyzing the same documents or having internal meetings and communications about this relatively simple discovery dispute").

### iv.  Clerical Work

Next, Defendant argues that Plaintiff's hours are unreasonable because they include time spent on clerical tasks.  A fee movant can recover only for a service "traditionally performed" by an attorney. *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1311 (S.D.

Fla. 2009). "Clerical work, such as the compilation of facts and statistics, coordinating schedules, basic communications, procedural matters, and housekeeping matters, is usually performed by legal assistants, not lawyers." *Machado v. Da Vittorio, LLC*, No. 09-23069-CIV, 2010 WL 2949618, at *3 (S.D. Fla. July 26, 2010).   Upon review of the challenged entries, totaling 25.5 hours, the Court notes that they do appear to all relate to clerical tasks (Doc. 59-11).   As a result, the Court's across-the-board reduction will take time spent on clerical tasks into consideration.

v.   Travel Time

Next, Defendants object to Plaintiff's inclusion of travel time in its petition. "[A]lthough there are no precise rules with respect to travel time, a fee applicant seeking to recover expenses incurred for retaining non-local counsel generally 'must show a lack of attorneys' practicing in that place who are willing and able to handle his claims.'" *Martinez v. Hernando Cty. Sheriff's Office*, 579 F. App'x 710, 714 (11th Cir. 2014)) (quoting *Barnes*, 168 F.3d at 437); *see also Brother v. Int'l Beach Club Condo. Ass'n, Inc.*, No. 6:03-cv-444-ORL28DAB, 2005 WL 1027240, at *5 (M.D. Fla. Apr. 28, 2005) ("Travel time is not properly visited on one's adversary, absent a showing of a lack of qualified local counsel.").

Here, Plaintiff submitted three declarations attesting to the fact that it was necessary to look beyond the local legal community to find attorneys with sufficient experience in the "highly specialized practice area of RLUIPA land use litigation" (Doc. 54, p. 12).[5]  Defendant does not contest this assertion, and even concedes that "Tampa may lack a religious land-use expert" (Doc. 59, p. 22).   Instead, Defendant argues instead that Plaintiff is not entitled to

---

[5] Docs. 54-6; 54-7; and 54-9.

have the City pay for an attorney with expertise on a given legal issue. (*Id.*, p. 23). Because Plaintiff has established it was necessary to look beyond this market for attorneys who were willing and able to handle this litigation, the Court finds that the inclusion of travel expenses in Plaintiff's application is reasonable.[6] *See, e.g.*, *James v. CSX Transp. Inc.*, No. 4:15-cv-204 (CDL), 2017 WL 2535726, at *6 (M.D. Ga. Feb. 21, 2017) (awarding fees for travel time where counsel believed it was in client's best interest to hire non-local co-counsel and the defendant provided no evidence to the contrary); *Cordova v. R&A Oysters, Inc.*, No. 14-0462-WS-M, 2016 WL 2642220, at *3 (S.D. Ala. May 9, 2016) (plaintiffs satisfied burden of establishing a lack of willing and able local counsel); *Scelta*, 203 F. Supp. 2d at 1334 (overruling objection to time spent traveling because "it was plainly reasonable for the defendants to employ their long-time New York counsel to represent them in this matter"); *cf. Ranize v. Town of Lady Lake, Fla.*, No. 5:11-cv-646-Oc-PRL, 2017 WL 1037047, at *6 (M.D. Fla. Mar. 10, 2015) (declining to award travel time where only one of plaintiffs' three fee experts attested to being unaware of local counsel who could have handled the case and defendant's fee expert was personally aware of five local attorneys who would have been qualified).

vi.   <u>Phantom Time</u>

Finally, Defendant argues that Plaintiff's fees should be reduced because its request includes "phantom time." Specifically, Defendant points out that the Supplemental Motion seeks reimbursement for $81,628.33 in fees paid to Mr. Rightmyer, but Mr. Rightmyer's declaration establishes that he charged only $53,672.50. Plaintiff responds that this was an

---

[6] The Court also notes that there was minimal travel time. Attorneys Dalton and Sterett traveled to and from Tampa a total of two times during the litigation—once for the preliminary injunction hearing and once for the mediation (Doc. 59-12).

inadvertent computational error, and the invoices attached to Mr. Rightmyer's declaration establish that his firm charged $60,112.50 (Docs. 59, 54-6).  As a result, Plaintiff adjusted its requested lodestar amount to $298,845.50.[7]  Given Plaintiff's concession, the Court need not include any "phantom time" in its across-the-board reduction.

### c.  Reduction

While Defendant advocates an across-the-board reduction of 45%, the Court finds the facts and circumstances of this case call for a lesser reduction.  As recognized by the Eleventh Circuit, "the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'"  *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436) (alterations in original).  Based on my own knowledge and experience concerning reasonable and proper fees, the undersigned finds an across-the-board reduction of the lodestar amount by 15% necessary and appropriate and recommends an award of attorney's fees in the amount of $254,018.68 as just and reasonable.  *See, e.g., Cornett v. Lender Processing Servs., Inc.*, No. 3:12-CV-233-J-99TJC, 2013 WL 6643873, at *6 (M.D. Fla. Dec. 17, 2013) (applying a 10% across-the-board reduction for redundant, duplicative, and administrative charges in the billing records); *United States ex rel. Higgins v. HealthSouth Corp.*, No. xx, 2020 WL 1529563, at *6 (M.D. Fla. Mar. 31, 2020) (applying a 20% across-the-board reduction for excessive time, clerical work and block billing).

### III.  Conclusion

Accordingly, the Court recommends:

---

[7] The amended lodestar also includes an additional $9,305.00 billed by Dalton & Tomich, PLC for tasks related to drafting the Reply (Doc. 59-1).

(1) Plaintiff's Supplemental Motion on the Amount of Attorney Fees and Expenses to Which it is Entitled (Doc. 54) be **GRANTED IN PART** and **DENIED IN PART**.

(2) Plaintiff be awarded attorneys' fees in the amount of $254,018.68 and costs in the amount of $4,347.70.

**RECOMMENDED** in Tampa, Florida, on April 11, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so.  28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.  Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1.

cc:    Hon. Thomas Barber